ROBERTSON, Justice,
concurring:
The fundamental effect of our adoption inheritance statute, Miss.Code Ann. § 93-17-13 (1972), is that it places adopted children in the same legal relationship vis a vis the adopting parents and, indeed, the remainder of the adoptive family, as though the children had been naturally born into that family. Thus, if there were no will in today’s case, Charles Sherman Posey would unquestionably take a one-fourth (¼) share of the disputed property. The difficulty is that, as an adopted child, Charles is subject not only to all of the rights of his three (3) siblings, but also the same exposures to disinheritance. As a man may by will disinherit his child, so he may disinherit his adopted child or, as in the case at bar, his adopted grandchild.
By legislative grant, those residing in this state at the time of their death have the power to control from the grave disposition of their property. Miss.Code Ann. § 91-5-1 (1972). There can be no question but that E.S. Bramlett had the legal power to provide by his will that no adopted child of his, or adopted grandchild of his, would take any interest in his property. Dodds v. Deposit Guaranty Nat’l. Bank, 371 So.2d 878, 882 (Miss.1979). Indeed a testator with conclusive legal effect may disinherit a grandchild for reasons far less rational or laudatory than that the grandchild has been adopted by his daughter.
The whole idea of empowering a man to make a will is to give him the choice of considering what will happen to his property if it passes under the statute of descent and distribution and then, if he decides that is not what he wants, to provide otherwise. We may find his provision otherwise quite scummy, but we enforce it nevertheless, subject to only a handful of exceptions.[1]
*838 I take it then that no one would seriously dispute that E.S. Bramlett was empowered by the law of this state to provide in his will that no child subsequently adopted by his daughter, Emmy Bramlett Posey, would every take so much as a nickel’s worth of the property he left to Emmy. The question then is whether Bramlett exercised that power in such a way that we are required to give his will that legal effect.
I have expressed elsewhere my strong conviction that instruments of privately-made law should be read as they would by an intelligent layman familiar only with the basics of the English language. I would place enormous emphasis upon correct English definition and language usage. See Thornhill v. System Fuels, Inc., 523 So.2d 983, 1007 (Miss.1988) (Robertson, J., Concurring). I think anyone familiar with the English language would have to say that a devise to Emmy Bramlett Posey for life “and at her death to the heirs of her body....” excludes any adopted children she may have, whether those children were adopted at the time the will were made or were adopted thereafter. Adopted children are simply not the “heirs of her body”, unless there is something afoot I know not of. I think Presiding Justice Hawkins’ analysis of the phrase “heirs of the body” at pages 5-8 of his proposed opinion, is quite correct, linguistically and legally as well. I find this testamentary directive far less abhorent than many others we would be bound on our oaths to enforce.
The Chancery Court, however, held otherwise and en route relied heavily on Dodds v. Deposit Guaranty National Bank, 371 So.2d 878 (Miss.1979). In Dodds, the testatrix devised certain property in trust for the benefit of her son “and his children.” The testamentary trust instrument further provided that the trustee had authority to do the necessary “for the support and maintenance and education of his children.” 371 So.2d at 879. Then came the critical language. The trust instrument provided that, at the death of the testatrix’ son, the property was to be distributed “to the descendants oí my son.” 371 So.2d at 879. In fact, subsequent to the execution of the will, the testatrix’ son adopted a child. In Dodds this Court held that the adopted child was a “descendant” within the meaning of the termination/distribution clause of the trust instrument. In so doing, the Court was aided by the fact that in the prior paragraph the trust had been created and directed administered for the benefit of the testatrix’ son “and his children.” In context the word “descendants” seems a synonym for “children” — and no one would question that the unqualified word “children” in a will would include adopted children.
Taking Dodds as a holding that the word “descendants” in a testamentary instrument includes adopted children, the Court below in the case at bar held that there is no legally significant distinction between the term “descendants” and the term “heirs of her body.” The Court reasoned, quite correctly, that each term connotes persons of one’s own blood and the biological begetting process.
A careful reading of Dodds yields a different view. Two statements appear reinforcing my reading that Dodds reads “descendants” as synonymous with the there previously used “children”. First, there is the Court’s conclusory statement that the adopted child is entitled to
share in the trust as a member of the class created by the trust unless there is language within the will directing otherwise.”
371 So.2d at 881. [Emphasis supplied] Second, in an exposition regrading the testator’s intent, the Dodds court said
Neither was the trust limited to the natural children of Edwin as could easily have been done.
371 So.2d at 882. [Emphasis supplied]
In the end, I come back to a point mentioned above: that a testator has the legal power to include or exclude adoptive children or grandchildren as he or she sees fit, only now my concern is whether others *839 around this state may have read Dodds as the Court below read it and relied to their detriment. It would give me pause if I thought a testator making a will in consultation with counsel and reading Dodds would have his or her will thwarted or frustrated by a decision today that Charles Sherman Posey was not an heir of the body of Emily Bramlett Posey. In my judgment the chance of that is one quite remote. Rather, a competent attorney carefully reading Dodds could only come to one conclusion, to-wit: to be sure that his client’s will did not get into litigation with the result that the client’s intention be frustrated, the point of inclusion or exclusion of adopted children should be addressed with far greater clarity. Great risks would attend reading Dodds as holding that the word “descendants” without more includes adoptive children and lawyers are charged to see that risk. Competent lawyers advising clients wishing to include adoptive children would surely counsel far greater specificity.

. See, e.g., Miss.Code Ann. § 91-5-25 (1972) (limitations on right to disinherit one’s spouse); Miss.Code Ann. § 91-5-31 (Statute of Mort-main); Carter v. Berry, 243 Miss. 321, 136 So.2d *838 871, 140 So.2d 843 (1962) (Rule against perpetuities); Tinnin v. First Bank of Mississippi, 502 So.2d 659, 665-66 (Miss.1987) (racial restrictions).