IN THE SUPREME COURT OF MISSISSIPPI
NO. 93-IA-00569-SCT

*IN THE MATTER OF THE ESTATE OF SAMUEL OTTO JONES, JR. SANDRA JONES PENALVER, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF SAMUEL OTTO JONES, JR., DECEASED, CAROL ANN JONES MANGUM AND JUDY MAE JONES KACKLEY*

*v.*

*SHARON BROWDER HOWELL, NATURAL MOTHER AND NATURAL GUARDIAN OF SAMUEL CLINTON HOWELL*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/06/93 |
| TRIAL JUDGE: | HON. GERALD E. BRADDOCK |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | TRAVIS T. VANCE JR. |
| | JAMES W. NOBLES JR. |
| ATTORNEYS FOR APPELLEE: | BIRDIA GREER PITTS |
| | RAYMOND OSBORN BOUTWELL JR. |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 8/8/96 |
| MOTION FOR REHEARING FILED: | 8/21/96 |
| MANDATE ISSUED: | 1/30/97 |

**BEFORE LEE, C.J., BANKS AND MILLS, JJ.**

**DAN LEE, CHIEF JUSTICE, FOR THE COURT:**

¶1. The Appellants, the sisters of the deceased, Samuel Otto Jones, Jr. (hereinafter Jones), brought an action in the Warren County Chancery Court to determine Jones' wrongful death beneficiaries for purposes of bringing a wrongful death action against the tortfeasor responsible for Jones' death. The lower court held that Jones' natural son, Samuel Clinton Howell, who had been adopted by another man in 1986, was Jones' wrongful death beneficiary under Section 11-7-13 of the Mississippi Code of 1972 (hereinafter Miss. Code Ann. § 11-7-13 (1972)). Jones' sisters (hereinafter the Estate) aggrieved by the chancellor's ruling, filed this interlocutory appeal and assigned the following as error:

**I. THE WRONGFUL DEATH STATUTE OF THE STATE OF MISSISSIPPI DOES NOT ALLOW AN ADOPTED CHILD WHOSE PARENT IS KILLED TO TAKE AS A**

**WRONGFUL DEATH BENEFICIARY UNDER SECTION 11-7-13 OF THE MISSISSIPPI CODE ANNOTATED.**

**II. CONSTRUCTION OF THE MISSISSIPPI WRONGFUL DEATH STATUTE BY THE CHANCERY COURT OF WARREN COUNTY, MISSISSIPPI, DEPRIVES THE ESTATE OF SAMUEL OTTO JONES, JR. OF RECOVERING ALL DAMAGES OF EVERY KIND.**

¶2. This Court has previously addressed the issues now before this Court in *Alack v. Phelps*, 230 So. 2d 789, 793 (Miss. 1970), and *Warren v. Foster*, 450 So. 2d 786 (Miss. 1984). In *Alack* and in *Warren*, this Court held that an adopted child could inherit from his natural parent or parents. Moreover, in *Alack*, this Court held that an adopted child could bring a wrongful death action for his natural father's death. Because we are bound by our previous decisions, we affirm the lower court's holding.

## STATEMENT OF THE CASE

¶3. Samuel Otto Jones, Jr., was killed in an accident on September 14, 1991. Jones' sister, Sandra Jones Penalver, applied for and was granted letters of administration for Jones' estate. Then, the Warren County Chancery Court authorized Penalver to proceed with any wrongful death claim that might lie for Jones' death. Subsequently, the Estate filed suit against the alleged tortfeasor in the United States District Court for the Southern District of Mississippi.

¶4. During the course of discovery conducted in the wrongful death action, the tortfeasor learned that Jones had a son by an earlier marriage and that the son had been adopted by Jones' ex-wife's new husband. As a result of this development, the Estate filed an action in the Warren County Chancery Court to determine whether Jones' natural son was a wrongful death beneficiary.

¶5. Samuel Clinton Howell, Jones' natural son,[1] was served with process through his mother and guardian, Sharon Browder Howell (Jones' ex-wife), and a hearing to determine Jones' wrongful death beneficiaries was held in the Warren County Chancery Court on April 14, 1993. After hearing arguments, the chancellor entered his Order holding Samuel Clinton Howell to be Jones' sole heir under the descent and distribution laws of the State of Mississippi as well as Jones' sole wrongful death beneficiary.

¶6. Jones' estate filed a motion to reconsider and this motion was subsequently denied. Thereafter, the Estate requested, and was granted, leave from the chancery court to file an interlocutory appeal with this Court. The Estate's request for interlocutory appeal was granted and this case is properly before this Court.

## STATEMENT OF THE FACTS

¶7. Samuel Otto Jones, Jr., was killed in an automobile accident in Hattiesburg, Mississippi, on September 14, 1991. Thereafter, Jones' estate filed a wrongful death action in the United States District Court of the Southern Judicial District of Mississippi. During the course of discovery, the alleged tortfeasor learned that Jones was survived by a natural son, Samuel Clinton Howell, who had been adopted by his mother's new husband. As a result of this revelation, the Estate filed an heirship

hearing in the Warren County Chancery Court to determine Jones' wrongful death beneficiaries.

¶8. It was determined at the heirship hearing that Jones was survived by his father, Samuel Otto Jones, Sr., and his sisters, Sandra Penalver, Carol Ann Jones Mangum, and Judy Mae Jones Kackley. Moreover, it was determined that Jones was also survived by a son, Samuel Clinton Howell (formerly Samuel Clinton Jones), born during his marriage to Sharon Browder Howell.

¶9. Jones and Sharon divorced in 1983, and Sharon and Samuel Clinton Jones moved to Louisiana where Sharon subsequently remarried. In 1986, Sharon's new husband, Bernard Howell, II, adopted Samuel Clinton Jones.

¶10. The lower court, after taking testimony and reviewing Mississippi case law, held that Samuel Clinton Howell was Jones' sole wrongful death beneficiary and sole heir under Mississippi's intestate succession law.

**STANDARD OF REVIEW**

¶11. Whether Samuel Clinton Howell is Jones' wrongful death beneficiary is a question of law, and we review questions of law *de novo.* This Court will reverse for erroneous interpretations or applications of the law. ***Bank of Mississippi v. Hollingsworth***, 609 So. 2d 422, 424 (Miss. 1992); ***Harrison County v. City of Gulfport***, 557 So. 2d 780, 784 (Miss. 1990).

> **I. THE WRONGFUL DEATH STATUTE OF THE STATE OF MISSISSIPPI DOES NOT ALLOW AN ADOPTED CHILD WHOSE PARENT IS KILLED TO TAKE AS A WRONGFUL DEATH BENEFICIARY UNDER SECTION 11-7-13 OF THE MISSISSIPPI CODE ANNOTATED.**

¶12. Simply put, the issue in this appeal is whether Samuel Clinton Howell, Jones' natural son, can bring a wrongful death action for the death of his natural father. The Estate argues that when we read Miss Code Ann. § 11-7-13 (Mississippi's wrongful death statute) in *pari materia* with Miss. Code Ann. § 93-17-13 (Mississippi's adoption decree statute), we must conclude that the legislature intended that Samuel Howell Clinton's rights to bring a wrongful death action for his natural father's death be terminated at the time of adoption. Further, the Estate argues that this Court is obligated under the Full Faith and Credit Clause, Article I, Section 4, of the United States Constitution to apply Louisiana's adoption law to the case *sub judice*. Specifically, the Estate argues that because Samuel Clinton Howell was adopted in Louisiana, we must look to Louisiana law to determine whether or not an adopted child can inherit from his natural parent. Under Louisiana decisional law, the Estate contends, a child who has been given up for adoption cannot inherit from his natural parent or parents. *See **Simmons v. Brooks***, 342 So. 2d 236 (La.App. 4th Cir. 1977).

¶13. We have previously addressed the question now before this Court in ***Alack v. Phelps***, 230 So. 2d 789, 793 (Miss. 1970). In ***Alack***, John B. Phelps allowed his parents to adopt his two sons after his first wife, Nola, died. Later, John B. Phelps was killed in a car accident and the boys' guardian brought a wrongful death action in their name against Alack. ***Id.*** at 790-791.

¶14. Alack argued that because the two boys had been given up for adoption, they were not entitled to bring a wrongful death action for their natural father's death. This Court, interpreting Section

1269-06 (the adoption decree statute) and Section 1453 (the wrongful death statute) of the Mississippi Code of 1942, rejected Alack's argument and held that the boys were entitled to inherit from their natural father and that they were legally entitled to bring a wrongful death action for their natural father's death. The *Alack* Court, interpreting Section 1269-06 of the Mississippi Code of 1942 Annotated (the predecessor to Miss. Code Ann. § 93-17-13), quoted 2 C.J.S. *Adoption of Children* § 63(c) p. 454 (1936) with approval and adopted the following rule regarding whether children who have been adopted can inherit from their deceased natural parent(s):

> In the absence of a statute to the contrary, although the child inherits from the adoptive parent, he still inherits from or through his blood relatives, or his natural parents. In view of the tendency of the courts to construe adoption statutes so as to benefit the child, as pointed out above in § 6 of this Title, and also, in in [sic] view of the fact that *a statute severing the relation between parent and child is in derogation of common law and should for that reason be strictly construed*, it has been held that an adoption statute providing that the natural parents shall be divested of all legal rights and obligations with respect to such child should not be construed so as to deprive the child of it right to inherit from or through its natural parents. *Under such a statute it cannot be assumed that the adopted child cannot inherit from its natural parent unless there is an express legislative declaration to that effect.*

*Alack*, 230 So. 2d at 793 (emphasis added).

¶15. On appeal, this Court held that Ronny and Johnny Phelps, the deceased's natural sons, were interested parties for purposes of Mississippi's wrongful death statute and, therefore, they should have been made parties to the wrongful death action brought by their half-sister for their natural father's death.[2] *Id.* Accordingly, this Court remanded the case so that Johnny's and Ronny's damages could be determined under the wrongful death statute. *Id.* at 795.

¶16. Applying the facts of this case to the law as announced in *Alack*, we find that Samuel Clinton Howell is Jones' heir for purposes of intestate succession and that he is entitled to bring a wrongful death action for his natural father's death. In the case *sub judice*, the Estate argues that this view has been "superseded" by the legislature's 1971 amendment of the adoption statute, Miss. Code Ann. § 93-17-13, and that subsequent Mississippi Supreme Court cases support its contention that an adopted child cannot inherit from his natural parents nor bring a wrongful death action for the death of the child's natural parent.[3] We disagree.

¶17. Jones' estate correctly points out that Miss Code Ann. § 93-17-13 was in fact amended in 1971. However, the part of that Section dealing with an adopted child's right to inherit property was not amended and retains the same language as was interpreted by this Court in *Alack*. Neither Mississippi's wrongful death statute (Miss. Code Ann. § 11-7-13) nor the adoption statute in question (Miss Code Ann.§ 93-17-13) expressly prohibits an adopted child from bringing a wrongful death action for the death of a natural parent or, for that matter, from inheriting from the deceased natural parent under the laws of intestate succession. The legislature has yet to "overturn" *Alack*. Therefore, we find no merit in the Estate's argument that the legislature superseded the *Alack* decision by subsequent amendments to statutory law.

¶18. Next, the Estate offers *Dodds v. Deposit Guaranty National Bank*, 371 So. 2d 878 (Miss. 1979), to support its argument that Samuel Clinton Howell is prohibited from inheriting from his

natural father and from bringing a wrongful death action for his natural father's death. However, **Dodds** does not support the Estate's argument. In **Dodds**, this Court, interpreting Mississippi's adoption decree statute, Section 93-17-13, held that an adopted child could inherit from his adoptive parents and adoptive brothers and sisters. 371 So. 2d at 881. The **Dodds** case certainly stands for the proposition that an adopted child, under our statutory laws, stands in the place of a natural child for the purposes of inheriting from an adoptive parent. **Dodds** does not, however, stand for the proposition that adopted children shall not inherit from their natural parents under our laws of intestate succession.

¶19. The Estate also offers **McLemore v. Gammon**, 468 So. 2d 84 (Miss. 1985), in support of its contention that an adopted child cannot inherit from its natural parent or bring a wrongful death action for the death of said natural parent. In **McLemore**, this Court held that the natural siblings of a child given up for adoption could not bring a wrongful death action for their sibling's death. The **McLemore** Court, interpreting Miss. Code Ann. § 93-17-13 and Miss. Code Ann. § 11-7-13, in *pari materia*, recognized that Mississippi's wrongful death statute did not expressly prevent the natural siblings of an adopted child from bringing a wrongful death action. Nonetheless, this Court looked to language from Section 93-17-13 which provides "*that the natural parents and natural kindred of the child shall not inherit by or through the child except as to a natural parent who is the spouse of the adopting parent*." **McLemore**, 468 So. 2d at 86 (citing Miss. Code Ann. § 93-17-13 (1972)). This Court rejected the deceased child's natural siblings' claim that they could bring a wrongful death action for the loss of their sibling who had been given up for adoption by their parents. This Court, relying upon the above quoted language from Section 93-17-13, held that "it would be less than logical to hold that the McLemores [the deceased child's natural parents] could not inherit from or through Ronnie Dale [the child they gave up for adoption] but that they could sue for his wrongful death." **Id.** at 87.

¶20. Thus, **McLemore** simply stands for the proposition that the natural siblings of a child given up for adoption cannot inherit from the child nor can the natural siblings bring a wrongful death action for the death of the adopted child. **Dodds**, on the other hand, stands for the proposition that an adopted child can inherit from his or her adoptive parents. Neither of these cases indicates that **Alack** has been overruled or, for that matter, that the case was limited to the facts contained therein. Accordingly, we find that our earlier decision in **Alack** governs the outcome of the case *sub judice*.

¶21. When dealing with the issue of adopted children bringing wrongful death actions for the death(s) of their natural parent(s), this Court has looked to Mississippi case law which holds that an adopted child can inherit from his natural parent(s). *See, e.g., Sledge v. Floyd*, 139 Miss. 398, 104 So. 163 (1925). This Court, by analogy, has cited our law allowing adopted children to inherit from their natural parents and applied the inheritance rule to wrongful death situations and, thus, allowed an adopted child to bring a wrongful death action for the death of his or her natural parent. *See, e.g., Alack*. We also note that none of the statutes in question, *i.e.*, Section 11-7-13 or Section 93-17-13, specifically prohibits an adopted child from bringing a wrongful death action for his natural parent's death. In fact, Section 93-17-13 only goes so far as to take away the natural parent's and sibling's right to inherit from, and bring a wrongful death action for the death of, a child given up for adoption. **McLemore**, 468 So. 2d at 84. Section 93-17-13 does not expressly take away the adopted child's rights to inherit from the natural parent or to bring a wrongful death action for the natural parent's death.

¶22. Moreover, Section 11-7-13 does not distinguish between the types of children entitled to bring a wrongful death action for the death of a parent, *i.e.*, natural or adoptive. The statute provides that the suit may be brought "in the name of a child for the death of a parent." Miss. Code Ann. § 11-7-13 (1972). While Samuel Clinton Howell was not Jones' legal child, he certainly was his biological and natural child. Mississippi's wrongful death statute allows an illegitimate child to bring a wrongful death action for the death of his parent provided the child complies with Section 91-1-15 of the Mississippi Code of 1972. It would be illogical to conclude that the legislature would allow an illegitimate child, who might have never had any interaction at all with his parent or have ever been recognized by the parent, to bring an action for that parent's wrongful death, and yet conclude that the legislature would then prohibit a child who had lived with the natural parent and was later given up for adoption from bringing a wrongful death action for the natural parent's death.

¶23. The Estate also argues that the Louisiana adoption of Samuel Clinton Howell took the form of a termination of parental rights as to Jones. The Estate offers Miss. Code Ann. § 93-15-109 for the proposition that the chancery court can terminate an adopted child's right to inherit from his or her natural parents. The Estate's reliance upon Section 93-15-109 is misplaced because the cited statute, although not factually applicable in this case, does not specifically divest an adopted child of his right to bring a wrongful death action for a natural parent's death.

¶24. The Estate argues that this Court's decision in *Warren v. Foster*, 450 So. 2d 786 (Miss. 1984), a factually similar case, was incorrect and ignored the Full Faith and Credit Clause of the Constitution of the United States of America. In *Warren*, William James Warren and Dee Warren conceived one child, Jeremy, during their marriage. William and Dee were subsequently divorced and Dee married Kenneth Wayne Foster. The Fosters resided in Tennessee; Kenneth Foster adopted Jeremy, and Jeremy's name was changed by the Tennessee court to Jeremy Foster. *Warren*, 450 So. 2d at 786.

¶25. Warren died while incarcerated in the Lowndes County Jail. At the time of his death, Warren was unmarried and survived by his mother, father, nine brothers and sisters, and Jeremy, Warren's sole issue. Warren's mother subsequently qualified as the administratrix of his estate, and after proceedings in the federal district court, a settlement was reached in the wrongful death action. The chancery court approved the settlement and thereafter, Jeremy Foster, Warren's natural son, was made a party to the proceeding prior to the estate being closed. *Warren*, 450 So. 2d at 786-87. After a hearing on the matter, the lower court held that Jeremy was entitled to inherit Warren's estate under Mississippi's law of descent and distribution.

¶26. Warren's estate appealed the chancellor's decision and argued that the lower court's ruling violated the Full Faith and Credit Clause of the United States Constitution because Tennessee statutory law (Tenn. Code. Ann. § 36-126 (1955)) did not allow a child given up for adoption to inherit from his natural parent who had given him up for adoption. *Id.* This Court rejected Warren's Full Faith and Credit Clause argument and affirmed the chancellor's ruling, which held that Mississippi law applied because the "general rule is that the law of the place where the property is situated or the law of the decedent's domicile controls the extent or the fact of the right of inheritance when in conflict with the law creating the status." *Id.* at 787.

¶27. Jones' estate has not presented this Court with any authority to demonstrate that *Warren* was incorrectly decided. Likewise, we have found no authority which would dictate a reversal of our

holding in *Warren*.

¶28. In the case *sub judice*, Jones' estate is located in Mississippi and not Louisiana, and therefore, under *Warren*, it is proper to apply the inheritance laws of the situs of the property. Accordingly, the Estate's argument that *Warren* was incorrectly decided is without merit.

¶29. Finally, Jones' estate offers *W.R. Fairchild Construction Co. v. Owens*, 224 So. 2d 571 (Miss. 1969), to support its argument that Samuel Clinton Howell is not entitled to bring a wrongful death action for Jones' death. In *Fairchild*, this Court held that a child given up for adoption was not entitled to workers' compensation death benefits when her natural father was killed on the job. The *Fairchild* Court, in denying the child her natural father's workers' compensation death benefits, found that the natural father's obligation to support his biological daughter had been terminated under our adoption statute, Section 93-17-13 and, therefore, the daughter was no longer presumed to be a dependent of her natural father for purposes of the workers' compensation statute. *Id.* at 575.

¶30. In *Fairchild*, the Court recognized that the employer's statutory obligation to pay workers' compensation death benefits to the deceased's natural daughter depended upon whether the child in question was dependent on her natural father for financial support. Since the deceased in *Fairchild* had given his daughter up for adoption and she had been legally adopted and supported by another man, this Court found that the deceased was not legally responsible for his natural daughter's support and, therefore, the child was not entitled to receive workers' compensation death benefits.

¶31. In the case *sub judice*, the wrongful death action is not based upon a statutorily mandated requirement of dependency as was the workers' compensation death benefits provision interpreted in *Fairchild*. Instead, under Section 11-7-13, the wrongful death action is to compensate the beneficiary for the loss of companionship and society of the deceased, the pain and suffering of the decedent between the time of injury and death, and punitive damages. *McGowan v. Estate of Wright*, 524 So. 2d 308, 314 (Miss. 1988). Therefore, the beneficiary needs only establish some of these elements in order to recover for the decedent's wrongful death. Accordingly, *Fairchild* is not dispositive of this issue. For the foregoing reasons we find that the Estate is entitled to no relief on this assignment of error and we find that the chancellor correctly applied our statutory law and case law.

> **II. CONSTRUCTION OF THE MISSISSIPPI WRONGFUL DEATH STATUTE BY THE CHANCERY COURT OF WARREN COUNTY, MISSISSIPPI, DEPRIVES THE ESTATE OF SAMUEL OTTO JONES, JR. OF RECOVERING ALL DAMAGES OF EVERY KIND.**

¶32. Jones' estate argues that the chancellor's ruling effectively negates the Estate's chances of recovery for damages because Samuel Howell Clinton, the child Jones gave up for adoption, will not be able to prove damages for the loss of love, society, companionship, loss of household services, loss of gifts, gratuities, remembrances, and support.

¶33. Mississippi's wrongful death statute creates a cause of action unknown to the common law, and we have held that the statute must be strictly construed. *Smith v. Garrett*, 287 So. 2d 258, 260 (Miss. 1973). The wrongful death statute creates a new and independent cause of action in favor of those named therein. *Partyka v. Yazoo Dev. Corp.*, 376 So. 2d 646, 650 (Miss. 1979) (citing

*Hasson Grocery Co. v. Cook*, 17 So. 2d 791 (Miss. 1944)).

¶34. From the facts of this case it certainly appears that Samuel Clinton Howell might have a difficult time establishing certain damages, as he was adopted in 1986 and the record is not clear whether he had any contact with Jones after 1986. Nevertheless, Howell can bring a wrongful death action and seek: (1) the present net cash value for Jones' life expectancy, (2) the loss of the companionship and society of the decedent, (3) damages for Jones' pain and suffering between the time of his injury and death, and (4) punitive damages. *McGowan*, 524 So. 2d at 311.

¶35. The Estate argues that this Court should reverse the chancellor's ruling so that the parties (his sisters) who can prove and recover the most in damages for Jones' death can bring the wrongful death action. Notwithstanding the Estate's argument, the wrongful death statute does not provide a mechanism to allow the courts to by-pass the statutory order of beneficiaries so that one statutory beneficiary, more removed from the deceased under the statute yet emotionally closer to the deceased, can bring the action over the proper statutory beneficiary. It is possible that at times the best relative to bring a wrongful death action, because of his closeness to the deceased, might not be the relative allowed by the statute to bring such an action. Nevertheless, the statute does not allow the courts to take this factor into consideration when determining the deceased's wrongful death beneficiary. Accordingly, we find no legal merit in this argument.

## CONCLUSION

¶36. We find that the lower court did not apply an incorrect legal standard when it determined that Samuel Clinton Howell was the sole heir and sole wrongful death beneficiary of Samuel Otto Jones, Jr. This Court previously addressed this issue in *Alack* and held that a child given up for adoption could bring a wrongful death action for the death of a natural parent even though the child had been given up for adoption. Thus, *Alack* controls the outcome of today's interlocutory appeal. The Estate's remaining arguments are without legal merit and accordingly, the lower court's decision is hereby affirmed.

¶37. **AFFIRMED.**

**PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS AND MILLS, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY ROBERTS AND SMITH, JJ.**

**McRAE, JUSTICE, DISSENTING:**

¶38. Because Samuel Clinton Howell was legally adopted in Louisiana, thus terminating the parental rights of the biological father, Samuel Otto Jones, Jr., Louisiana law should govern the child's rights as Jones's wrongful death beneficiary. Accordingly, I dissent.

¶39. The Louisiana courts, reading together wrongful death and adoption statutes similar to our own, have found that an adopted child has no right to recover under a wrongful death action arising from

the death of his biological parent. ***Simmons v. Brooks***, 342 So. 2d 236 (La. App. 1977). The child and his mother lived in Louisiana, where the boy was legally adopted by his step-father in 1986. Under Louisiana law, he would have no hope or expectation of bringing a wrongful death action as Jones's beneficiary. Why, merely because the biological father fortuitously lived and died in Mississippi, should the child enjoy a windfall at the expense of the proper parties to a wrongful death action who long had believed that all ties had been severed by the termination of parental rights pursuant to Louisiana law in 1986?

¶40. The majority asserts that because neither Miss. Code Ann. § 11-7-13 (the wrongful death statute) nor § 93-17-13 (the adoption statute's inheritance provisions) bars an adopted child from inheriting from a biological parent or otherwise benefitting from his estate, the child is the proper party to bring a wrongful death action. The majority further relies on Mississippi case law that has, by analogy, applied the laws of inheritance to wrongful death actions. ***Alack v. Phelps,*** 230 So. 2d 789, 793 (Miss. 1970). Thus it finds that because Howell is Jones's heir for purposes of intestate succession, he is entitled to bring this wrongful death action.

¶41. In ***Simmons,*** the Louisiana court noted that a distinction exists between inheritance law and the wrongful death statute:

> The jurisprudence is clear that LSA-R.C.C. Article 2315 [the wrongful death statute] is not part of the law of successions and thus, neither the survival action nor the wrongful death action are rights which are transmitted from the tort victim to his heirs as an inheritance.
>
> . . . .
>
> The right to recover for a wrongful death is not an inheritance right. That right of action in tort is a legal right which is divested from the child at the time of his adoption in accord with LSA-R.C.C. Article 214 [the adoption statute].

***Simmons,*** 342 So. 2d at 236. I believe this to be the better-reasoned view.

¶42. The family of Samuel Otto Jones, Jr. had no reason to believe that Jones's child, adopted by another man under laws of a state which bars an adopted child from bringing a wrongful death action for the loss of his biological parent, could supersede their interest in such a cause of action. Applying Louisiana law, as we must in determining the rights of the child, a resident of Louisiana adopted under Louisiana law, Samuel Clinton Howell is not a proper party to bring this wrongful death action. Even assuming *arguendo* the applicability of Mississippi law, our recent decision in ***Bullock v. Thomas***, 659 So. 2d 574 (Miss. 1995), where the putative father of an illegitimate child, for whom he provided some financial support but did not publicly acknowledge, was not entitled to sue for the child's wrongful death, suggests that where the biological parent and child have no real familial bond, one cannot recover for the wrongful death of the other. Therefore, even under Mississippi law, a mere biological tie does not vest in one the right to bring a wrongful death action. Accordingly, I dissent.

**ROBERTS AND SMITH, JJ., JOIN THIS OPINION.**

1. Samuel Clinton Howell, formerly Samuel Clinton Jones, was adopted by Bernard Howell, II, in Caddo Parish, Louisiana on September 26, 1986.

2. Ronny's and Johnny's father married another woman after giving them up for adoption. He had a daughter by this second wife, and the wrongful death action against Alack was brought on behalf of this daughter from his second marriage.

3. Notwithstanding Jones' contention, this Court in *Warren v. Foster*, 450 So. 2d 786, 788 (Miss. 1984), noted that "Alack was decided January 26, 1970, and the legislature has not amended the adoption statute to change the effect of that decision."