# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-00264-SCT

*IN THE MATTER OF THE ESTATE OF BRYCE BLANTON, DECEASED: TONITA GONZALES AND TIM BLANTON*

*v.*

*NELLIE GRAY, ELLEN BROWN, JAMES BLANTON, ELWOOD BLANTON, AND BEVERLY ANN BLANTON WELLS ADAMS, ADMINISTRATRIX OF THE ESTATE OF CHARLES FRANK BLANTON*

| | |
|---|---|
| DATE OF JUDGMENT: | 1/10/2001 |
| TRIAL JUDGE: | HON. STUART ROBINSON |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | DONALD L. KILGORE |
| ATTORNEYS FOR APPELLEES: | ROBERT H. TYLER |
| | JOHN E. SHAW |
| | H. E. HORNE, JR. |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND REMANDED- 06/13/2002 |
| MOTION FOR REHEARING FILED: | 7/22/2002; denied 9/5/2002 |
| MANDATE ISSUED: | 9/12/2002 |

**BEFORE SMITH, P.J., WALLER AND COBB, JJ.**

**COBB, JUSTICE, FOR THE COURT:**

¶1. Mississippi residents Bryce Blanton and his wife, Juanita Blanton, died as a result of an automobile accident while vacationing in Mammoth Springs, Arkansas. Pursuant to Bryce's last will and testament, Shelby Jean Durfee (Juanita's adult sister) and Tonita Gonzales (Bryce's adult daughter) were appointed co-executrixes of his estate. The co-executrixes filed Bryce's will for probate in the Chancery Court of the First Judicial District of Hinds County, Mississippi. The co-executrixes also pursued a wrongful death action in federal court in Arkansas, which resulted in a $2 million compromise settlement. In order to properly distribute the wrongful death settlement proceeds (the proceeds), the co-executrixes filed two petitions with the chancery court that are germane to this appeal. The first was a "petition to determine heirs and wrongful death beneficiaries." The second was a "petition for authority to settle doubtful claims and disbursement of

attorneys' fees and for distribution of settlement proceeds."

¶2. In both the petitions, the co-executrixes averred that because the wrongful deaths occurred in Arkansas, Arkansas law was controlling. The co-executrixes further stated that they had reached an agreement for distribution of the settlement proceeds, pending approval of the chancery court. The settlement proceeds, after expenses, were to be divided equally between Bryce's estate and Juanita's estate. Under Arkansas law, Bryce's share of the proceeds would then be distributed between his two adult children and his five living brothers and sisters. Juanita's share of the proceeds was dispersed in a separate civil action and is not a part of this appeal.

¶3. On the day of the chancery court hearing regarding the distribution of the settlement proceeds, Bryce's son, Tim, filed an affidavit which stated he did not agree with the proposed distribution, and intended to file an answer to the petition for distribution, denying that it was fair and equitable and in accordance with the law. The chancery court entered three orders, the cumulative effect of which was to ratify all the requests of the co-executrixes, save one. The chancellor ordered that the wrongful death settlement funds allocated to Bryce's estate were to remain in the attorney's trust account until further order of the court.

¶4. Subsequently, Tim filed his answer to the petitions for distribution, challenging the application of Arkansas law. Ironically, his answer was joined by his sister Tonita, who as co-executrix had filed the petition seeking distribution under Arkansas law. In his answer, Tim denied that Arkansas law was controlling in this matter, disagreed with the proposed assignment of Bryce's heirs, and disagreed with the proposed disbursement of the proceeds. The chancellor scheduled a hearing to determine the proper distribution of the proceeds.[1]

¶5. After the hearing, the chancery court handed down its opinion and order, and later, its final judgment. The chancery court applied Arkansas law[2] and distributed 25% to each of Bryce's two children, 10% to each of Bryce's four surviving siblings, and 10% to the estate of his recently deceased sibling. Aggrieved, the children appeal asserting three assignments of error (edited):

> **I. SHOULD MISSISSIPPI OR ARKANSAS SUBSTANTIVE LAW BE APPLIED IN THIS CASE?**
>
> **II. DID THE CLAIM OF CHARLES FRANK BLANTON'S ESTATE ABATE UPON HIS DEATH?**
>
> **III. WAS IT ERROR TO DISTRIBUTE 10% OF BRYCE'S ESTATE TO EACH OF HIS SIBLINGS?**

¶6. Because Mississippi's wrongful death statute is controlling, we conclude that the children's appeal is well taken on Issue I, and we reverse and remand. The resolution of this issue is dispositive of this appeal; thus we decline to address the other issues.

## FACTS

¶7. On September 8, 1997, Bryce and Juanita, residents of Hinds County, Mississippi, were vacationing in Arkansas when they were involved in an automobile accident that claimed both their lives. Juanita died at the scene, and Bryce died soon after arrival at the hospital. There is no dispute about the order of death. At the time of the accident, Bryce was 61 years old, and Juanita was 59. They had been married only a few

years and had no children as a result of this union. However, both had been married previously, and each had grown children from those previous marriages.

¶8. In his last will and testament, Bryce gave, devised and bequeathed all of his estate (after payment of debts, taxes, and funeral expenses) to his wife Juanita. The will stated that in the event of their simultaneous deaths, or if Juanita predeceased him, he directed that his estate be distributed equally among their five children: Tonita Gonzales and Tim Blanton, Bryce's children from a previous marriage; and Steven DeFord, Charles DeFord, and Kimberly Burrell, Juanita's children from a previous marriage.

¶9. Bryce's will has been duly probated and the distribution of his real and personal property completed. Juanita's share of the wrongful death settlement proceeds was distributed in a separate civil action. The sole issue remaining is the distribution of Bryce's share of the wrongful death settlement proceeds.

## STANDARD OF REVIEW

¶10. Whether Bryce's siblings should be included as wrongful death beneficiaries is a question of law. We review questions of law de novo. *Estate of Jones v. Howell*, 687 So.2d 1171, 174 (Miss. 1996).

## DISCUSSION

### I. SHOULD MISSISSIPPI OR ARKANSAS SUBSTANTIVE LAW BE APPLIED IN THIS CASE?

*A. Choice of Law.*

¶11. The children argue that the chancery court erred by applying Arkansas law because Mississippi has the most "substantial contacts" with the parties and subject matter of this action. Further, the children argue that Mississippi's interest in the decedents, their estates, and the expectations of their rights undoubtably outweighs any interest of Arkansas.

¶12. Whether Mississippi or Arkansas substantive law applies is critical to this case because the wrongful death statutes of Mississippi and Arkansas contemplate different beneficiaries. Mississippi's wrongful death statute distributes the proceeds as follows:

> Damages for the injury and death of a married man shall be equally distributed to his wife and children, and if he has no children all shall go to his wife; damages for the injury and death of a married woman shall be equally distributed to the husband and children, and if she has no children all shall go to the husband; and **if the deceased has no husband or wife, the damages shall be equally distributed to the children ....**

Miss. Code Ann. § 11-7-13 (Supp. 2001)(emphasis added). In contrast, Arkansas' beneficiary pool is expanded as follows:

> (d) The beneficiaries of the action created in this section are:
> (1) The **surviving spouse, children, father, mother, brothers, and sisters of the deceased person**;
> (2) Persons, regardless of age, standing in loco parentis to the deceased person; and
> (3) Persons, regardless of age, to whom the deceased stood in loco parentis at any time during the life

of the deceased.

Ark. Code Ann. § 16-62-102(d) (Michie Supp. 2001)(emphasis added). In effect, under Arkansas law the siblings and the children are all potential beneficiaries. Under Mississippi law only the children acquire that status.

¶13. In *Mitchell v. Craft*, 211 So.2d 509, 510 (Miss. 1968), this Court modified the traditional rule that the governing law is the law where the accident occurred. In *Mitchell*, the administratrix of the estate of a Mississippi resident, killed in a car accident in Louisiana, brought a wrongful death suit in Mississippi. This Court stated:

> The traditional rule, that the governing law is the law of the place where the injury occurred, has been discarded as a rule of invariable application in recent years by most of the courts which have examined it. It requires disregarding the facts in many cases and the governmental interests of the forum state. Unless the judicial function is abdicated, it should not be an unvarying guide to choice-of-law or conflict-of- law decisions in all tort cases. The only merits of that mechanical doctrine are certainty and predictability. Thus in many cases it bears little relationship to any relevant considerations for choosing one law against another in a particular tort case. The facts of the instant case illustrate this observation. **Louisiana's sole relationship with the occurrence is the purely adventitious circumstance that the collision happened there**.

*Id.* at 512-13 (emphasis added).

¶14. Just as in *Mitchell*, Arkansas' sole relationship with the occurrence is the purely adventitious circumstance that the accident happened there. Bryce's children correctly argue that Mississippi clearly has the most substantial contacts in the present case. In *Mitchell*, this Court further held:

> This case involves a choice-of-law or conflict-of-law problem in an action for wrongful death resulting from an automobile accident, in which plaintiff's decedent and defendant's decedent were in separate cars. **Both decedents were domiciled in Mississippi, their estates are being administered here, and whatever expectations they might have had were centered in Mississippi**. . . . We modify the previously existing rule in this jurisdiction, which applied invariably the law of the place of injury, and hold that under the factual situation existing in this case, the most substantial relationships of the parties and the dominant interest of the forum require application of Mississippi law, in accordance with the principles summarized in the Restatement (Second) of Conflicts of Law sections 175, 145, 164 and 6 . . ..

*Mitchell*, 211 So.2d at 509 (emphasis added).[3]

¶15. Applying the rule of *Mitchell*, it is clear that Mississippi substantive law must be applied to the case sub judice. First, Bryce and Juanita were domiciled in Mississippi. All of Bryce's brothers and sisters are domiciled in Mississippi. Tim is domiciled in Mississippi (Tonita lives in California). In fact, both decedents and six of the seven parties to this suit are domiciled in Mississippi, none are domiciled in Arkansas. Second, Bryce's estate is being administered in Mississippi. Third, whatever expectations Bryce might have had were centered in Mississippi. Bryce's last will and testament was drafted and witnessed in Hinds County, Mississippi. In his will, Bryce directed that if he and his wife died, he wanted the balance of his estate to be distributed equally among their five children. Nowhere does Bryce make provision for part of

his estate to be distributed to his siblings. It would be fair to say that Bryce's justified expectations were that, upon his death, his estate would be distributed equally to his children, not half to his children and half to his siblings. Mississippi law would provide for that outcome; Arkansas law would not. As in *Mitchell*, under the factual situation existing in this case, the most substantial relationships of the parties and the dominant interest of the forum require application of Mississippi law.

### B. Judicial Estoppel.

¶16. The siblings do not dispute the children's choice of law argument; instead, they argue that judicial estoppel operates to prohibit the children from now changing their position in order to secure a more advantageous position. They further argue that if the children are allowed to apply Mississippi law to determine the beneficiary class, they would be entitled to claim all of the net settlement proceeds, to the exclusion of the siblings, even though they had used the siblings to enhance the number of beneficiaries and increase the potential exposure to the entities that caused the deaths.[4] They further note that Tonita, in her capacity as co-executrix, had twice petitioned the court to apply Arkansas law in this matter. Further, Tim did not disagree with applying Arkansas law in the affidavit he submitted to the court.

¶17. In *Mauck v. Columbus Hotel Co.,* 741 So.2d 259 (Miss. 1999), this Court explained the doctrine of judicial estoppel as follows:

> the doctrine "is based on expedition of litigation between the same parties by requiring orderliness and regularity in pleadings." "[J]udicial estoppel will be applied in civil cases where there is multiple litigation between the same parties and one party knowingly 'assert(s) a position inconsistent with the position in the prior' litigation." However, . . . where the first position asserted was taken as a result of mistake, judicial estoppel should not be invoked.

*Id.* at 264-65 (citations omitted). Further, in *Thomas v. Bailey,* 375 So.2d 1049, 1051 (Miss. 1979), we stated, "the doctrine is inapplicable unless the parties were adverse in the original proceedings."

¶18. The children correctly respond that by denying Arkansas law is controlling, they have not taken a position inconsistent with a previously asserted position. While it is true that Tim did not take a position as to which law applied in his affidavit, he filed a timely answer to the petitions where he denied that Arkansas law was controlling. And while it is true that Tonita was a signatory on both the petitions and the answer, the former was in her capacity as co-executrix, the latter was in her capacity as beneficiary. Also, there is a question as to whether Tonita "knowingly" asserted Arkansas law was controlling in her petitions, or whether it was merely the result of mistake. Further, the parties have not been involved in multiple litigations; this is the only proceeding in which the children and the siblings have been in an adversarial position. Therefore, judicial estoppel is not applicable to this case. Because the resolution of this issue is dispositive of the case, we need not address the children's remaining assignments of error.

### CONCLUSION

¶19. In its final opinion and order, the chancery court noted that it had previously determined that Arkansas law should govern this action. However, the court did not enlighten us as to how it came to that determination. In its previous orders, the chancery court had merely surmised that, as the accident occurred in Arkansas, Arkansas law must govern. In any event, Tim denied that Arkansas law was controlling. Thus, that issue was contested, and the court should have made findings of fact and conclusions of law rather than

a mere conclusory statement that the issue has been previously determined. Applying the *Mitchell* rule, we conclude the chancery court erred in determining that Arkansas law was controlling.

¶20. Because Mississippi substantive law applies, and pursuant to Mississippi's wrongful death statute, Miss. Code Ann. § 11-7-13 (Supp. 2001), only the children and not the siblings are contemplated beneficiaries, we reverse the chancery court's judgment and remand this case for further proceedings in accordance with this opinion.

¶21. **REVERSED AND REMANDED.**

**PITTMAN, C.J., SMITH, P.J., WALLER, DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY.**

1. Prior to that hearing, one of Bryce's siblings, Frank, died, and his estate was substituted as party. The children filed a motion to abate the claims of Frank's estate, arguing his death resulted in his claim lapsing. The chancery court denied the motion.

2. In its opinion and order, the chancery court gave no explanation for its choice of laws, only stating: " This Court has previously determined that Arkansas state law should govern this action." The record is silent as to when, why and under what circumstances the "previous determination" was made by the chancellor.

3. *See also [Sheppard Pratt Physicians, P.A. v. Sakwa](link)*, 725 So.2d 755 (Miss. 1998); *Estate of Jones v. Howell*, 687 So.2d 1171 (Miss. 1996); *Ford v. State Farm Ins. Co.*, 625 So.2d 792 (Miss. 1993); *McDaniel v. Ritter*, 556 So.2d 303 (Miss. 1990); *Boardman v. United Services Auto. Ass'n*, 470 So.2d 1024 (Miss. 1985); *Craig v. Columbus Compress & Warehouse Co.*, 210 So.2d 645 (Miss. 1968).

4. However, there is no documentation in the record to support this claim; nor does the settlement agreement indicate which state's law was used. In its order denying the children's motion to abate Frank's claim, the chancery court similarly claims that the siblings were used in order to increase the amount of the settlement. However, there is no evidence for this assertion contained in the record. The siblings make an unsubstantiated statement that in the settlement of the wrongful death action, use of Arkansas law "increased the number of beneficiaries and increased the potential exposure to the entities that caused the deaths. This obviously lead [sic] to an increase in the settlement offer." The release document from the party paying the wrongful death proceeds also does not indicate the intended beneficiaries or the method of computing the final dollar amount.